UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JOHN O'MALLEY,                        )
                                      )
         Plaintiff,                   )
                                      )
v.                                    )    Case No. 13-CV-60-JED-PJC
                                      )
CALUMET GP, LLC,                      )
                                      )
         Defendant.                   )

# OPINION AND ORDER

Plaintiff, John Q. O'Malley, brings two disability-based discrimination claims against defendant, Calumet GP, LLC ("Calumet"). O'Malley maintains that, following the amputation of his legs, Calumet terminated his employment as an asphalt sales representative because of his disability and failed to make any attempt to accommodate his disability. The parties have filed cross motions for summary judgment (Docs. 36 and 37/38). For reasons explained below, the Court grants summary judgment in favor of Calumet.

## BACKGROUND

Calumet produces specialty hydrocarbon products, such as those used in asphalt roadway surfaces. O'Malley was hired by Calumet as an asphalt sales representative in February 2009. He worked from his home in Glenpool, Oklahoma, and was supervised by Chuck Tallant, who was the manager of asphalt sales in Shreveport, Louisiana.

On August 30, 2011, O'Malley began a leave of absence which resulted from a medical illness that ultimately required the amputation of both of his legs below the knee. Following this amputation, O'Malley underwent rehabilitation and was fitted with prosthetics. Calumet documented O'Malley's leave of absence as leave pursuant to the Family and Medical Leave Act ("FMLA"). In January 2012, O'Malley's leave of absence under the FMLA was extended and

he was advised by Janet Eisenhunt, a human resources specialist at Calumet, that he should take advantage of the long-term disability benefits accorded to him as a Calumet employee.

On January 8, 2012, O'Malley submitted an application for disability benefits under the plan, which was provided through Lincoln National Life Insurance Company ("Lincoln"). O'Malley's application represented that he was unable to work at that time because he could not walk. He further stated that he required assistance in activities of daily life by way of a driver to take him to his rehabilitation appointments. O'Malley was granted long-term disability benefits thereafter. O'Malley has testified that, near the end of January, his condition improved and he became able to walk with the assistance of a walker and drive himself.

In March 2012, O'Malley decided it was time to get back to work. He visited Dr. Burleson's office on March 16 and told him that he wished to return to work. Dr. Burleson filled out a "Work/School Status Note" which stated that O'Malley could return to work under the following restrictions: "Patient's permitted activity is walking or standing only occasionally, occasional lifting of 10 pounds maximum and/or carrying articles like small tools." (Doc. 39-2, at 28). That work release was provided to Calumet.

Calumet had questions regarding how the limitations described by Dr. Burleson would affect O'Malley's ability to do his job. David Burford, Calumet's Vice President of Human Resources, wrote to Dr. Burleson seeking clarification. This March 23, 2012 letter from Burford contained a checklist of job functions Calumet maintained O'Malley had to perform as an asphalt sales representative. Dr. Burleson checked three of the six items on the checklist as functions O'Malley could perform, but represented that, at that time, O'Malley would **not** be able to "safely walk/navigate construction sites/uneven surfaces", "walk[] substantial distances on varying elevation grades", or climb. (Doc. 48-1). Dr. Burleson's response also stated that the

duration of these limitations would be temporary and that O'Malley may improve in approximately six to 12 months. Dr. Burleson also stated that O'Malley's physical medicine and rehabilitation doctor might be better suited to inform Calumet as to the duration of O'Malley's limitations. Burford also requested in his letter that Dr. Burleson state whether there was anything Calumet could do to help O'Malley perform any of the tasks he had listed him as being unable to currently perform. Dr. Burleson responded that there was nothing he was aware of that could be done to help O'Malley perform the listed tasks.

Prior to sending his letter, Burford did not discuss with O'Malley the listed job functions provided to Dr. Burleson. The six job functions were instead based upon a job description for O'Malley's position which was drafted by Tallant, O'Malley's direct supervisor. Burford did not make any attempt to contact O'Malley's rehabilitation doctor following receipt of Dr. Burleson's response. In addition, no internal discussions at Calumet occurred with respect to potential accommodations for O'Malley's disability because Calumet relied upon Dr. Burleson's representations that he was not aware of anything that could be done by Calumet to enable O'Malley to perform the listed job functions.

On April 11, 2012, following the receipt of Dr. Burleson's response, Burford sent O'Malley a letter. Burford informed O'Malley as follows:

> On April 2, 2012[,] your physician, James E. Burleson, D.O., provided to us the latest medical report concerning your condition and has confirmed that at this time you cannot perform the essential functions of your job. In this notice your physician has also indicated that the earliest he would expect you to return to work would be 6 – 12 months. As such, we can no longer hold your current position open for you.
>
> \* \* \*
>
> Your Family Medical Leave expired on March 24, 2012. You may apply for open positions within the company for which you are qualified and can meet the

>essential function of the job. At this time, your current employment status will
>remain as an Active Employee on Unpaid Leave of Absence.

(Doc. 48-10). After receiving this letter, O'Malley made no attempt to discuss with Dr. Burleson the report he had given to Burford or discuss his ability to do his job with anyone at Calumet.

O'Malley contends that, prior to his receipt of the letter, he spoke to Janet Eisenhunt via telephone in early March 2012 regarding his status. O'Malley testified that Eisenhunt told him, in essence, that if he "wasn't back by March 24th, [he] would no longer have a job." (Doc. 48-2, at 115). That date—March 24, 2012—was the date O'Malley's FMLA leave expired. As a result, when O'Malley received Burford's letter stating that he was still an active employee, O'Malley states that he was surprised. Yet, O'Malley did not contact anyone at Calumet for the purpose of clarifying his status because, as he puts it, he believed he had already been terminated on March 24. Nor did O'Malley request that he be reassigned to any vacant position within the company with less physical demands. Indeed, O'Malley states that his only contact with Calumet related to his employment after the April 11, 2012 letter was a telephone conversation with Chuck Tallant regarding the return of his company truck. O'Malley further states that during that conversation, Tallant told him he was no longer an employee.

On May 23, 2012, O'Malley filed a charge of discrimination with the Equal Employment Opportunity Commission and Oklahoma Human Rights Commission, alleging that Calumet had discriminated against him because of his disability. He filed this lawsuit on February 1, 2013, alleging civil rights claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Oklahoma Anti–Discrimination Act, Okla. Stat. tit. 25, § 1101, *et seq.* ("OADA"). On August 28, 2013, O'Malley's counsel informed Calumet that O'Malley believed he was then able to perform all of the activities in question in the March 12, 2012 letter to Dr. Burleson and the parties began discussion regarding O'Malley's potential return to work. In the

proposed pretrial order, the parties state that on April 15, 2014, O'Malley returned to work in his previous position.

**STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

The Supreme Court recently reiterated that it is reversible error for a court to weigh the evidence or resolve any disputed issues in favor of the moving party. *See Tolan v. Cotton*, 572 U.S. ___, 134 S. Ct. 1861, 1866-68 (2014) (per curiam). A district court may not credit the evidence of the party seeking summary judgment and ignore evidence offered by the non-movant. *Id.* Thus, reaching factual inferences that conflict with the non-movant's evidence is contrary to the "fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Id.* at 1868. The reason for this long-

standing principle is that "witnesses on both sides come to [the] case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system." *Id.*

## DISCUSSION

**1. O'Malley's ADA Claim**

Both parties seek summary judgment with respect to liability under the ADA.[1] Critical to determining the merits of either party's request for summary judgment is whether O'Malley can establish a prima facie case of discrimination under the ADA.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination cases are generally subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The plaintiff bears the initial burden of establishing a prima facie case of discrimination under the ADA. To establish a prima facie case, a plaintiff must demonstrate (1) that he is "disabled" within the meaning of the ADA, (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job, and (3) that he was discriminated against because of his disability.

---

[1] The parties largely agree that O'Malley's OADA claim turns on the outcome of his ADA claim. O'Malley does argue that the OADA claim is subject to a slight variation in applicable standard, though not one relevant to the outcome here.

*Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1261 (10th Cir. 2009); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 748 (10th Cir. 1999).[2]

If the plaintiff meets that burden, the defendant must offer a legitimate, non-discriminatory reason for the employment action. If the defendant satisfies that burden, the plaintiff then has the burden of demonstrating that the defendant's proffered reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802-03; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Assuming a plaintiff meets his initial burden to show a prima facie case and the defendant offers a legitimate, non-discriminatory reason, the plaintiff then has to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "Mere conjecture that the employer's reason is pretext . . . will not defeat a motion for summary judgment." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

Calumet asserts that O'Malley cannot demonstrate that he was "qualified" under the ADA or that Calumet discriminated against him because of his disability. The Court agrees that O'Malley's claim fails under the "qualified" prong of the ADA analysis, and therefore needn't discuss Calumet's other argument.

O'Malley has the burden of demonstrating that he was qualified to perform the essential functions of his job with or without accommodation. *Hennagir*, 587 F.3d at 1262. O'Malley

---

[2] The specific formulation of the third element depends on the claim asserted. Where the claim is for wrongful termination, the plaintiff must establish that he was terminated "because of his disability," whereas the third element of a claim for failure to accommodate requires evidence that the employer failed to take "reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in the fairly immediate future." *Bartee v. Michelin North American, Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004) (quoting *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1252 (10th Cir. 2004)). O'Malley asserts both wrongful termination and failure to accommodate.

asserts that a dispute of fact exists as to what the essential functions of his job were. Calumet concedes as much; however, it maintains that such a dispute is not material here because Calumet was entitled to rely on O'Malley's physician's representations that he could not perform the six listed job functions (even if O'Malley disputes that they were essential) and that Calumet could not do anything to accommodate the limitations listed by Dr. Burleson.

It is well established that, in determining whether an employee is qualified to perform the essential functions of his job, an employer is entitled to rely on medical determinations made by physicians. *See, e.g., Stafne v. Unicare Homes*, 266 F.3d 771, 774 (8th Cir. 2001) (employer entitled to rely on medical opinions from plaintiff's own doctors "that she needed a 'totally sedentary sit-down job' and was qualified for 'seated work only.'"); *Weigel v. Target Stores*, 122 F.3d 461, 467 (7th Cir. 1997) (employer entitled to rely on opinions submitted by plaintiff's own doctor in determining whether she was qualified to continue working in her position despite her medical impairment); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (holding that plaintiff was totally disabled based in part on doctor's medical opinion, even though plaintiff's deposition testimony was to the contrary); *Davis v. Lockheed Martin Operations Support, Inc.*, 84 F. Supp. 2d 707, 712 (D. Md. 2000) ("where as here, the individual with a disability presents her employer with a report from her own doctor attesting to those limitations, the employer is not required to disregard that report and rely instead upon the subjective belief of the individual about what her limitations are").

Calumet was entitled to rely on Dr. Burleson's representations that O'Malley could not perform the listed job functions. O'Malley made no attempt to inquire further regarding Dr. Burleson's opinions when he received Burford's April 11, 2012 letter. He did not contact Dr. Burleson as to why he was not fit to return to work, nor did he request that Burford discuss the

job functions which the company considered essential. Even had O'Malley disputed Dr. Burleson's conclusions at that time, Calumet still would have been entitled to rely upon Dr. Burleson's opinion. *See Munson v. Shriners Hospitals for Children*, 2014 WL 2880264, at *8 n.7 (D. Utah June 24, 2014) ("Although Mr. Munson disagreed with his doctor's orders, an employer may rely on doctor's opinions over an employee's unsupported request for a different accommodation without violating the ADA."); *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 511-12 (S.D.N.Y. 2012) (finding employer did not violate the ADA where employer relied on doctor's unrestricted authorization for employee to return to work and refused employee's unsupported request for restriction to light-duty work). Moreover, there is nothing in the record to suggest that Calumet sought to rely on O'Malley's physician's opinion in bad faith. While O'Malley may dispute the validity of one or more of the listed job functions for purposes of this litigation, Calumet's reliance on Dr. Burleson's response was reasonable in light of the fact that the listed job functions were based upon the job description for O'Malley's position drafted by Chuck Tallant, O'Malley's direct supervisor.

O'Malley argues that Calumet was not entitled to rely on Dr. Burleson's response in light of the Tenth Circuit's opinion in *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir. 1996). *Lowe*, however, does not so hold. There, the court held that the employer was not entitled to rely upon an occupational therapist's general statement that Lowe was "not a candidate for employment at this time as a kitchen manager." *Id.* at 1174. The court noted that the occupational therapist's general statement did not address any essential functions of the employee's job or make any inquiry into whether a reasonable accommodation could be made. *Id.* Here, Dr. Burleson stated that O'Malley could not perform three of the six listed job

9

functions and specifically stated that he was not aware of anything Calumet could do to enable O'Malley to be able to perform those functions. *Lowe* is therefore distinguishable from this case.

O'Malley also faults Calumet for not seeking his input regarding the listed job functions and not providing him with a copy of Dr. Burleson's response. More precisely, he argues that, "by making a decision without giving Plaintiff the opportunity for input, Defendant closed down the interactive process." (Doc. 48, at 20). This misstates Calumet's obligation. Calumet was not obliged to engage in the interactive process at that point in time. The Tenth Circuit explains:

> It is important to note that **the interactive process is triggered only if the employee is "qualified,"** and, as discussed above, the term "qualified" is defined to include the concept of reasonable accommodation. Thus, the employer necessarily must make a threshold determination that the disabled employee may be accommodated, and is, therefore, qualified within the meaning of the ADA. It is at that point, the regulations recommend, that the employer and employee work together in order to identify how best to accommodate the employee.

*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995) (emphasis added). Calumet reached its initial conclusion, based upon Dr. Burleson's opinion, that O'Malley was not qualified to perform the job, with or without any accommodation. No interactive process was required once that determination was made.

Having found that Calumet was entitled to rely on Dr. Burleson's opinion that O'Malley was not qualified under the ADA, no inquiry is necessary as to whether he suffered any disability-based discrimination (i.e., termination or a failure to accommodate) at the hands of Calumet. Calumet is entitled to summary judgment with respect to O'Malley's ADA claim. O'Malley's request for summary judgment is therefore denied.

**2.      O'Malley's OADA Claim**

O'Malley's OADA claim is premised upon the same facts and legal theories as his ADA claim. "The Tenth Circuit has determined that a plaintiff's OADA claim fails if her federal

discrimination claims fail." *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246 (N.D. Okla. 2010) *aff'd*, 406 F. App'x 260 (10th Cir. 2010) (collecting cases). As such, Calumet is likewise entitled to summary judgment with respect to this claim.

## CONCLUSION

O'Malley failed to make a prima facie showing of disability-based discrimination under the ADA or OADA. Calumet was entitled to rely upon O'Malley's physician's representations regarding the limitations he would face in performing his job.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 37) is **granted**. Plaintiff's motion for summary judgment (Doc. 36) is **denied**. A separate judgment will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion in Limine (Doc. 42) and the parties' objections to deposition designations (Docs. 72 and 73) are **moot**.

**SO ORDERED** this 14th day of July, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE